(No. 14141.—Judgment affirmed.)

THE PUBLIC UTILITIES COMMISSION *ex rel.* The Hillsboro Coal Company, Appellee, *vs.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellant.

*Opinion filed December 22, 1921—Rehearing denied Feb. 9, 1922.*

1. RAILROADS—*order of Public Utilities Commission establishing switching charge is not interference with interstate commerce.* An order of the Public Utilities Commission establishing a charge for switching service between the complainant's mine located within the State and the main line of railroad used by the shipper in making shipments of coal to points in Illinois is not an interference with interstate commerce even though the railroad company is engaged in both intrastate and interstate commerce.

2. SAME—*when order does not compel railroad company to give use of its terminal facilities to another.* An order of the Public Utilities Commission establishing a charge for switching over the tracks of the defendant railroad company from the complainant's mine to the main line of another railroad company does not violate the provision of section 44 of article 4 of the Public Utilities act against giving the use of the terminal facilities of the defendant to another carrier, where the defendant has voluntarily opened its terminal facilities for switching to other shippers but has discriminated against the complainant.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

GEORGE B. GILLESPIE, G. M. GILLESPIE, D. P. CONNELL, and L. P. DAY, (L. J. HACKNEY, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, ALBERT D. RODENBERG, and WILLIAM E. TRAUTMANN, for the Public Utilities Commission.

CLARENCE B. CARDY, for the Hillsboro Coal Company.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Hillsboro Coal Company, owning and operating a mine at Hillsboro, located on the switch-track of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, known as the Big Four, and within the switching district· at that place, made complaint to the Public Utilities Commission of unreasonable charges and unjust discrimination against the coal company by the Big Four in performing switching service. The complaint alleged that the Big Four and the Chicago and Eastern Illinois Railroad Company jointly operate a main line of railroad from Pana to Mitchell through Hillsboro, serving a great many industries and coal mines located on and adjacent to said line of railroad, and that the Big Four charged to the coal company an unreasonable and discriminatory switching rate, which prohibited it from shipping to certain natural markets in this State. It made the two railroad companies and the receiver of the Chicago and Eastern Illinois Railroad Company parties, and prayed for an order requiring them to cease and desist from discrimination against the coal company and establishing a reasonable rate applying to the transportation of complainant's coal from its mine to points in this State. After a hearing the commission made an order reciting that the coal company owns and operates a mine in the switching district of Hillsboro six-tenths of a mile from the main line of the Big Four railroad, over which the Chicago and Eastern Illinois Railroad Company operates its trains and cars under a mutual trackage agreement; that prior to February 29, 1920, the Big Four charged for switching cars between the mine and the rail-

road ten cents per ton of 2000 pounds, with a minimum charge of two dollars and a maximum charge per car of four dollars; that on that date the Big Four canceled the switching rate and thereafter refused to switch cars to and from complainant's mine from and to the Chicago and Eastern Illinois railroad; that the Big Four does all the switching for the two roads in the Hillsboro switching district; that the switching service which it performs for the other mines in that district is substantially the same as the switching service which it refuses to perform for the complainant; that the other mines receive Big Four switching service and can ship over either the Big Four or the Chicago and Eastern Illinois railroad; that the Big Four gives switching service and a lower rate to other mines and other industries in the same situation as the mine of complainant, and that the public necessity requires that complainant's mine should be operated at full capacity and have an outlet by way of the Chicago and Eastern Illinois railroad and to that end to have switching service at the same rate and in the same manner and on the same terms as the other mines in the Hillsboro switching district. It was ordered that the Big Four should remove the discrimination and furnish switching service to the complainant at Hillsboro on the same terms and conditions and at the same rates and in the same manner as it furnishes such service to the other mines in the switching district, and that the charge for switching service should be at the rate of thirteen and one-half cents per ton of 2000 pounds, with a minimum charge of two dollars and a maximum charge of four dollars per car. An appeal was prosecuted by the Big Four to the circuit court of Sangamon county, which confirmed the order, and a further appeal was taken to this court.

The Big Four owns and operates a railroad through Hillsboro over which the Chicago and Eastern . Illinois Railroad Company operates its trains and cars under a

mutual trackage agreement entered into on November 1, 1902. The mine of the Hillsboro Coal Company is located on a switch-track of the Big Four at that place within the switching district and the Big Four does all the switching in the district. In June, 1918, when both railroad companies were under Federal control, there was established from the mine of the Hillsboro Coal Company a switching charge on coal of ten cents per ton to the Chicago and Eastern Illinois railroad at that point. At the termination of Federal control, on February 29, 1920, the switching rate was canceled by the Big Four, leaving in effect a maximum rate of fifty-three cents per ton. No change was made in the switching rate or service to or from any other industry or coal mine in the Hillsboro switching district, and the Big Four, after canceling the rate, refused to switch cars from and to the interchange point of the two railroads and the Hillsboro mine.

The brief and argument for the appellant under several different heads attacks the order as an interference with interstate commerce, on the ground that it seeks to regulate, and if enforced will impose a burden upon, such commerce. Counsel for both parties have furnished the court with very thorough and comprehensive briefs and arguments on that question in its various phases, but we do not deem it necessary or advisable to again go over the ground of the decisions where it has been held that such an order as this is not an interference with interstate commerce and does not impose any burden upon it. There is no substantial distinction between the switching service in this case and the right of the State to regulate it so far as interstate commerce is concerned and the regulation of the rate charged by the railroad company for transporting cars from connecting lines to the shipper's place of business, which was fully considered in the case of *Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 268 Ill. 49. The subject was there reviewed, and it was

held that such regulation came within the decision in *Simpson* v. *Shepherd,* 230 U. S. 352, known as the Minnesota Rate Cases. On appeal to the. Supreme Court of the United States the judgment of this court was affirmed, and the doctrine of the rate cases, that there is a field of operation for the power of the State over intrastate rates and the power of the nation over interstate rates, and that the fixing of reasonable rates for intrastate transportation has been left where it was found, in the States and the agencies created by the States to deal with that subject, was repeated and indorsed. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 242 U. S. 333.) This court had previously declared the same doctrine in *Mulberry Hill Coal Co.* v. *Illinois Central Railroad Co.* 257 Ill. 80, where it was said that a railroad company engaged in both intrastate and interstate commerce is not entirely emancipated from control of the State, provided the State does not impose any burden upon interstate commerce; and the law on that subject was again stated in *Public Utilities Com.* v. *Baltimore and Ohio Southwestern Railroad Co.* 281 Ill. 405. The complaint in this case related solely to intrastate traffic, and the complaint was the unjust discrimination respecting such traffic. The prayer was to establish and put in force a reasonable and non-discriminatory rate for transportation from Hillsboro to other points in this State when the route was over the line of the Chicago and Eastern Illinois Railroad Company.

It is said by counsel for appellant that in the shipment of coal from Hillsboro to Chicago, if it were carried over its line a part of the way would be in the State of Indiana, since its line crosses into Indiana and returns to this State. It was held in *Hanley* v. *Kansas City Southern Railway Co.* 187 U. S. 617, that such a shipment would be interstate commerce, but the complaint in this case did not embrace a shipment going around through the State of Indiana, and such a shipment was neither included in the

complaint nor in the order. The order only related to shipments within the State, and required the Big Four to perform switching service to and from the Chicago and Eastern Illinois railroad for such shipments. If a shipment over the line of the Big Four to Chicago would be inter-state commerce and within the control of Congress it is not ground for setting aside the order.

It is complained that the order violates section 44 of article 4 of the Public Utilities act by requiring the Big Four to give the use of its terminal facilities to another car-rier engaged in like business. It was held in *Chicago, Mil-waukee and St. Paul Railway Co.* v. *Public Utilities Com.* 267 Ill. 544, that an order relating to switching charges in the Chicago switching district did not turn over the com-pany's terminal facilities to other railroads, and there was the same holding in *Public Utilities Com.* v. *Chicago and Northwestern Railway Co.* 279 Ill. 110, where the Public Utilities Commission required the railway companies oper-ating within the Chicago switching district to establish joint rates. Another reason why the Big Four cannot avail it-self of the provision of section 44 is, that it has not rested behind the statutory shield against giving the use of its ter-minal facilities to another carrier but has voluntarily opened its terminal facilities for switching to some shippers and for some purposes. That was decided in *Louisville and Nashville Railroad Co.* v. *United States,* 238 U. S. 1. It was there held that a carrier cannot say that its terminal facilities are open for one purpose and not for another.

It is urged that the Public Utilities Commission has no authority to establish through routes or joint rates where a railroad is made a party to a through route and has over its own line an equally satisfactory route between the termi-nals. The Public Utilities Commission has not established any through route or joint rate, and the argument, if sound, does not apply to this case.

The judgment is affirmed.   *Judgment affirmed.*