(No. 11165.—Judgment and order reversed.)

THE STATE PUBLIC UTILITIES COMMISSION, Appellee, *vs.*
THE BALTIMORE AND OHIO SOUTHWESTERN RAILROAD
COMPANY, Appellant.

*Opinion filed December 19, 1917.*

1. CARRIERS—*State may regulate intra-State commerce of inter-State carrier.* Congress has paramount authority over inter-State commerce, but the State may regulate that portion of the commerce of an inter-State carrier which is purely intra-State, subject only to such regulation by Federal authority as is necessary to protect and regulate inter-State commerce.

2. SAME—*extent of the State's power where commerce is both intra-State and inter-State.* As to commerce which is both inter-State and intra-State, the State may regulate that which is within the State and even indirectly affect the inter-State portion, in the absence of action by Congress or its delegated agency on the subject, provided the requirements of the State do not amount to a burden upon inter-State commerce. (*Mulberry Hill Coal Co.* v. *Illinois Central Railroad Co.* 257 Ill. 80, and *Chicago, Milwaukee and St. Paul Railway Co.* v. *State Public Utilities Com.* 268 id. 49, followed.)

3. SAME—*when power to act rests with Congress and not the State.* Where commerce is solely inter-State, or where the inter-State and intra-State transactions of carriers are so related that the government of one involves the control of the other, it is Congress, and not the State, which is entitled to prescribe the final and dominant rules therefor.

4. SAME—*authority to determine whether inter-State carrier's rule for car distribution is reasonable rests with Inter-State Commerce Commission.* A State may require an inter-State carrier to furnish cars at points within the State within a reasonable time, considering all the circumstances, including the demands of inter-State commerce, and the State and Federal courts have concurrent jurisdiction of actions for damages for failure to perform the duty; but if an inter-State carrier has established a rule for the distribution of cars in times of car shortage and administers it fairly, the authority to determine whether the rule is reasonable rests solely with the Inter-State Commerce Commission.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

GRAHAM & GRAHAM, (EDWARD BARTON, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, and FRANK W. SULLIVAN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, the State Public Utilities Commission of Illinois, upon a hearing of a citation to the appellant, the Baltimore and Ohio Southwestern Railroad Company, found as a fact that the plan adopted by the appellant for the distribution of coal cars in time of car shortage was unjust, unreasonable and in violation of section 52 of article 4 of an act entitled "An act to provide for the regulation of public utilities," (Laws of 1913, p. 460,) and ordered it to desist from that method and practice and to distribute its coal cars as required by that section. An appeal was taken to the circuit court of Sangamon county, where the order was affirmed, and a further appeal to this court was allowed and perfected.

Section 52, article 4, of the act to provide for the regulation of public utilities, contains the following provision: "In case of insufficiency of cars at any time to meet all requirements, such cars as are available shall be distributed among the several applicants therefor in proportion to their respective immediate requirements without discrimination between shippers, localities or competitive or non-competitive places."

The appellant operates a railroad, the main line of which begins at Parkersburg, West Virginia, and runs through several States, including this State, to St. Louis, Missouri, and it is engaged in the inter-State transportation of coal from mines in different States. The plan adopted by it for the allotment of coal cars when there are not sufficient cars to supply the demand is based upon the average daily ship-

ments of the various mines. That month of the twelve months preceding for which shipment figures are available which has the highest average daily shipments is the month taken for rating the mine, and the rate is used to fix the proportionate requirements of the mine and to govern distribution during periods when the demand for cars exceeds the supply. The plan was found by the Public Utilities Commission to be unjust to the operators of coal mines in this State, for the reason that the operators of mines in the eastern coal fields have a steady market for their coal throughout the year, and throughout the summer months, when a full car supply is available, ship coal to the seaboard for distribution to northern points, where it is stored for winter consumption, and thereby build up a high rating under appellant's plan, while the markets served by the Illinois mine operators become active only during the winter months, when there is a shortage of cars and no opportunity is afforded the operators to build up a rating during those months on account of shortage in the car supply, but, being unable to get sufficient cars from the appellant, the mine operators are compelled to seek other markets and ship coal to points on other lines which can and do furnish empty cars for loading, which fact is not considered in arriving at the mine rating.

The argument for appellant is that the State has no jurisdiction whatever over the distribution of coal cars of an inter-State carrier even though used entirely in intra-State commerce, because the Federal authority has assumed control of every carrier transacting an inter-State business and the Federal power of regulation is exclusive. The argument is not supported by reason or authority. Congress has paramount authority over inter-State commerce, but the State may regulate that portion of the commerce of an inter-State carrier which is purely intra-State, subject only to such regulation by Federal authority as is necessary to protect and regulate inter-State commerce. As to commerce

which is both intra-State and inter-State, the State may regulate that which is within the State and even indirectly affect the inter-State portion, in the absence of action by Congress or its delegated agency, provided the requirements of the State do not amount to a burden upon inter-State commerce. The power to regulate commerce depends upon the nature of the commerce, and if it is solely inter-State the Federal authorities, only, can legislate directly therein, and to the extent necessary to protect and regulate inter-State commerce they may even regulate intra-State commerce. Wherever the inter-State and intra-State transactions of carriers are so related that the government of one involves the control of the other, it is Congress, and not the State, that is entitled to prescribe the final and dominant rule. (*Houston, East and West Texas Railway Co.* v. *United States,* 234 U. S. 342.) In that case the railroad companies had made rates in favor of traffic through the State of Texas and against similar traffic between Louisiana and Texas, and the Supreme Court held that Congress had power to prevent the instrumentalities used in common for inter-State and intra-State commerce from being used in their intra-State operations to the injury of inter-State commerce. In *Simpson* v. *Shepherd,* 230 U. S. 352, (Minnesota Rate Cases,) the court, upon an exhaustive review of the authorities, stated that the doctrine was fully established that the State could not prescribe inter-State rates but could fix reasonable intra-State rates throughout its territory; that neither by the original Inter-State Commerce act nor by its amendment did Congress seek to establish a unified control over inter-State and intra-State rates, and did not set up a standard for intra-State rates or authorize its commission to prescribe either maximum or minimum rates for intra-State traffic, but, on the contrary, the fixing of reasonable rates for intra-State transportation was left where it had been found,—with the States and the agencies created by the States to deal with that subject.

The question has been considered twice by this court, and in each case the decision was affirmed by the Supreme Court of the United States. *Mulberry Hill Coal Co.* v. *Illinois Central Railroad Co.* 257 Ill. 80, was an action on the case for a failure to furnish cars at the coal mine of the plaintiff within a reasonable time after the same were required for the transportation of coal, as required by section 22 of the act in relation to fencing and operating railroads. That section requires railroad corporations to furnish cars within a reasonable time for the transportation of property furnished for such transportation, and the defense was that the statute was null and void because repugnant to the commerce clause of the constitution of the United States. The railroad of the defendant extended through a number of States and its coal cars were used in inter-State commerce. The market for coal was in St. Louis, Missouri, and it was stipulated that if cars had been furnished, ninety-five per cent of the coal shipped in them would have been shipped into other States and would have been shipped in inter-State commerce. There was a recovery in the trial court, and it was held by this court that the statute was a valid exercise of legislative power over commerce, inasmuch as it only required a railroad corporation to furnish cars within a reasonable time in view of all the circumstances and conditions, including the requirements of inter-State commerce. The case was taken by writ of error to the Supreme Court of the United States, where the judgment was affirmed. That court agreed with the conclusion of this court that the statute did not impose a direct burden upon inter-State commerce so as to be void in the absence of legislation by Congress, because it only required a railroad company to furnish cars within a reasonable time after demand, and what was a reasonable time was to be determined in view of the requirements of inter-State commerce. It was held that the trial court was right in refusing to

dismiss the suit for want of jurisdiction. *Illinois Central Railroad Co.* v. *Mulberry Hill Coal Co.* 238 U. S. 275.

In *Chicago, Milwaukee and St. Paul Railway Co.* v. *State Public Utilities Com.* 268 Ill. 49, this court upheld the power of the commission to fix the rate on coal and manure from Galewood to Morton Grove, in this State, notwithstanding the fact that the company was engaged in inter-State commerce and cars might come from other States. The defense in that case was that the order placed a burden upon inter-State commerce, in violation of the commerce clause of the Federal constitution, but it was held that the State had authority to regulate rates for transportation wholly within the State, although such authority did not extend to the regulation of charges for inter-State transportation or to discrimination against inter-State commerce. That case was removed to the Supreme Court of the United States, where the judgment was affirmed, and it was held that Congress not having exercised its paramount constitutional power in cases where there may be a blending of inter-State and intra-State operations of inter-State carriers, the State is not precluded from the regulation of rates within the State which do not impose a direct burden upon inter-State commerce. *Chicago, Milwaukee and St. Paul Railway Co.* v. *State Public Utilities Com. of Illinois,* 242 U. S. 333.

The decisions relied upon by appellant do not sustain its argument. In *Chicago, Rock Island and Pacific Railway Co.* v. *Hardwick Farmers' Elevator Co.* 226 U. S. 426, the statute of Minnesota, which made it the duty of a railroad company, on demand, to furnish cars for the transportation of freight at terminal points on its railroad in Minnesota within forty-eight hours and at intermediate points within seventy-two hours after such demand, was held to be invalid. The court said that Congress had imposed a specific duty upon a railroad company to furnish cars on a reasonable request and had given a remedy for

the violation of the duty, and said that a statute of the arbitrary character of the one in question was void. There was a like decision in *Houston and Texas Central Railroad Co. v., Mayes,* 201 U. S. 221, concerning a statute which imposed a penalty of $25 per day for a failure to furnish cars within a certain number of days after the requisition for the same, regardless of all duties arising in inter-State commerce. In *St. Louis and Southern Railroad Co.* v. *Arkansas,* 217 U. S. 136, the railroad commission of Arkansas had made a rule that a railroad company must furnish cars within five days after a written application therefor by a shipper. By that rule the demands of a shipper in Arkansas would be complied with regardless of the demands of inter-State commerce, and the court said that it necessarily involved the assertion of power of the State to absolutely forbid the efficient carrying on of inter-State commerce and was void.

The Hepburn amendment of 1906 to the Inter-State Commerce act requires every carrier subject to the provisions of the act to provide and furnish transportation upon reasonable request therefor, but neither Congress nor the Inter-State Commerce Commission has ever established any rule or system of car distribution or mine rating, and no reason has been given why the State has lost control over commerce within the State although the carrier is also engaged in inter-State commerce. Wherever the inter-State and intra-State transactions of carriers are so related that the government of one involves the control of the other the paramount authority is in Congress, which possesses power to take all measures necessary or appropriate for the protection of inter-State commerce. But that is far from saying that the State has no jurisdiction over the commerce within its borders.

There is a reason, however, why the Public Utilities Commission was lacking in jurisdiction to make the order here involved. There was no complaint or finding that the

rule of appellant was not fairly administered as between
different shippers but the complaint and order were directed
against the rule itself.  In *Puritan Coal Co.* v. *Pennsylvania
Railroad Co.* 237 Pa. St. 420, (Ann. Cas. 1914B, 37,) there
was a recovery of damages caused by the failure of the
company to furnish cars to the mining company for ship-
ment of coal to points within and without the State.   The
charge was that the company had failed to perform its duty
and to furnish cars, but in violation of a State statute had
unjustly discriminated against the plaintiff by a failure to
distribute cars in accordance with the fixed rule that in time
of car shortage cars should be allotted to coal companies
on the basis of mine capacity.   The Supreme Court of the
United States affirmed the judgment, and held that the
jurisdiction of State courts in any case where the decision
did not involve the determination of matters calling for the
exercise of the administrative power and discretion of the
Inter-State Commerce Commission nor relate to a subject
as to which the jurisdiction of the Federal courts had other-
wise been made exclusive had not been superseded by any
act of Congress but was concurrent with the Federal courts,
and that the State court had such jurisdiction to recover
damages arising in inter-State commerce out of the failure
of the railroad company to furnish the coal company with
cars to which it was entitled under the carrier's own rule.
It was said that the action was not based on the ground
that the rule of the railroad company was unfair, unreason-
able, discriminatory or preferential, but was for damages by
reason of the carrier's failure to furnish cars according to
its own rule.   It was said, however, that a determination of
what the rule should be, called for the administrative powers
of the Inter-State Commerce Commission, and that, where
the rule for the distribution of cars is attacked as unfair or
discriminatory, it is for the Inter-State Commerce Commis-
sion to decide whether such a rule unjustly discriminates
against one class of shippers in favor of another, and until

that body declares the practice to be discriminatory and unjust no court has jurisdiction of a suit against an inter-State carrier for damages occasioned by its enforcement. In *Illinois Central Railroad Co.* v. *Mulberry Hill Coal Co. supra,* the court said that the denial of the motion to dismiss the suit for want of jurisdiction was clearly sustained by the recent decision in *Puritan Coal Co.* v. *Pennsylvania Railroad Co. supra,* where it was held that the Inter-State Commerce act did not supersede the jurisdiction of the State courts in any case, new or old, where the decision did not involve the determination of matters calling for the exercise of the administrative power and discretion of the commission, and that nothing in the Hepburn amendment of 1906, which gave new rights to shippers, affected the jurisdiction of State courts, but where the rule of distribution itself was attacked as unfair or discriminatory a question was raised which called for the exercise of the authority of the Inter-State Commerce Commission. It was held in both cases that the State court had jurisdiction without previous application to the Inter-State Commerce Commission, but the doctrine of the decisions was, that if the rule adopted for the distribution of cars is attacked as unfair or discriminatory, the right to determine that question rests with the Inter-State Commerce Commission.

The law as settled by the Supreme Court of the United States,—the final authority on the question,—is, that a State statute requiring an inter-State carrier to furnish cars at points within the State within a reasonable time is in entire harmony with the Hepburn amendment of the Inter-State Commerce act and the State and Federal courts have concurrent jurisdiction of actions for a failure to perform the duty, but if an inter-State carrier has established a rule for the distribution of cars and administers it fairly and equally between applicants, the authority to determine whether the rule is reasonable rests with the Inter-State

Commerce Commission and no court has jurisdiction until the commission has determined that question.

The Public Utilities Commission being without jurisdiction to determine whether the rule of the appellant was unjust or unreasonable, the judgment of the circuit court and the order of the commission are reversed.

*Judgment and order reversed.*

---

(Nos. 11751-11752.—Reversed and remanded.)
THE CITY OF CHICAGO *vs.* JAMES F. LORD *et al.*—(KAL KALISH, Appellant, *vs.* ABRAHAM PRIESS, Appellee.— Same Appellant *vs.* Same Appellee.)

*Opinion filed December 19, 1917.*

1. EMINENT DOMAIN—*when judgment awarding compensation for property taken is not an adjudication as to ownership of award.* Where compensation is awarded in a special assessment proceeding for damages for property taken for a public improvement, in which proceeding both the occupant and the owner of the property are made parties, the judgment for compensation to the owner and to the parties interested is not an adjudication as to the ownership of the award nor as to its division among said parties.

2. SAME—*when motion to vacate order dismissing petition for division of compensation should be allowed.* Where an appeal from a judgment awarding compensation for property taken has not been disposed of by the filing of the final order with the clerk of the lower court that court is without any jurisdiction to make any order, and a motion to vacate said court's order dismissing an intervening petition for a division of the compensation should be allowed notwithstanding the petition was filed by the party who appealed from the judgment awarding compensation.

3. SAME—*when perfecting of an appeal will not waive a motion to vacate order dismissing a petition for division of compensation.* The perfecting of an appeal from an order dismissing a petition for division of compensation for the taking of property by eminent domain will not waive a motion to vacate said order where the appeal is not perfected until after the motion is made and denied.

4. SAME—*when a division of compensation awarded for taking property cannot be made on appeal.* On an appeal from an order denying a motion to vacate an order dismissing appellant's petition