ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. STATE.

Opinion delivered September 30, 1929.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. West-brooke* for St. L.-S. F. R. Co., appellant; *Thomas B. Pryor* and *H. L. Ponder* for Mo. Pac. Rd. Co., appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, *Hugh Williamson, Pace & Davis* and *Tom W. Campbell,* of counsel, for appellee.

MEHAFFY, J. On the 30th day of January, 1929, the prosecuting attorney for the Third Judicial District of Arkansas filed before two justices of the peace in the Eastern District of Lawrence County four hundred informations; two hundred against the St. Louis-San Francisco Railway Company before Justice of the Peace W. Story, and two hundred against the Missouri Pacific before Justice of the Peace J. F. Israel.

All informations are alike, except as to date upon which the offenses charged were alleged to have been committed, and each information contained the allegation that the defendant unlawfully, knowingly and willfully failed, refused and neglected to comply with a certain finding, order, decree and mandate of the Arkansas Railroad Commission requiring the railroad company to construct and erect sheds over the platform of its depot at Hoxie, Arkansas, in said district and county, and described as umbrella standard sheds, to be 250 feet long and having a spread of 12 feet, and to be located so as to accommodate passengers boarding and alighting from trains, and defendants failed, refused and neglected, in the alternative, to construct and erect one shed

of the dimensions aforesaid, to provide adequate protection to passengers boarding and alighting from trains in any direction after said Arkansas Railroad Commission had, by its order in case No. 517, when said matter was properly and legally before said Arkansas Railroad Commission on the 2d day of February, 1926, ordered the said defendant companies, within 45 days after the entry of said order, to erect and construct said sheds, contrary to the statute in such cases made and provided, etc. There was a second count in each information against the defendants for failure to stop its trains at the depot at Hoxie. The court, however, treated this second count as surplusage.

Neither of the defendants appeared in justice court, and there was a judgment for $25 in each case, a total fine of $5,000 against each defendant, with costs.

Each defendant appealed to the circuit court, where the cases were tried and the judgments of the justice of the peace courts affirmed.

In the justice courts all the cases against the Missouri Pacific Railroad Company were consolidated and all the cases against the San Francisco Railway Company were consolidated, and then all the cases against both roads were tried together, and were also tried in the same manner in the circuit court.

On the 1st day of November, 1925, a petition signed by citizens, as required by the statute, was filed against each appellant with the Railroad Commission. Notice was served on each railroad company that the Arkansas Railroad Commission would hold a special meeting in the city of Hoxie on Friday, December 4, 1925, for the purpose of taking up for consideration the petition of citizens requesting that the railroad companies be required to erect sheds over the platform at Hoxie, and notified the companies that the commission would take such action with reference to said petition as might appear just and necessary. Both appellants were not only notified but were present, and each filed answer, and resisted the

application for an order of the Railroad Commission. Testimony was taken, and, after the testimony was taken, an order was made by the Railroad Commission requiring the railroad companies to build sheds.

The appellants appealed to the circuit court of Pulaski County, where the order of the Railroad Commission was affirmed. The order of the circuit court, as found at page 763 of 176 Arkansas, is as follows:

"The two railroads intersect at Hoxie, and passengers leave the train of each railroad before the train crosses the track of the other, or reaches the station. Consequently passengers going to and from the station to the trains are of necessity required to walk quite a distance. Under the circumstances of this peculiar case, in the opinion of this court, the order of the Arkansas Railroad Commission does not appear unreasonable or arbitrary. It is claimed that the construction of sheds at Hoxie would require an unreasonable outlay by the railroads, considering the results to be obtained. The matter of expense is to be determined by the railroad companies on the approval of the Railroad Commission. Considering the whole case, this court is of the opinion that the order of the Arkansas Railroad Commission is not arbitrary or unreasonable, and will therefore be affirmed." *St. L. S. F. R. Co.* v. *Albright,* 176 Ark. 761, 4 S. W. (2d) 910.

From the judgment in the circuit court both appellants prosecuted an appeal, and the case was affirmed by this court on the 26th day of March, 1928.

In the present case the State introduced the order of the Railroad Commission requiring the companies to build sheds, and also introduced the secretary of the commission and one of the commissioners.

As we have already said, the case was appealed to the circuit court, where the judgment of the justice of the peace was affirmed, and this appeal is prosecuted to reverse the judgment of the circuit court.

At the conclusion of the testimony in the circuit court, the appellants moved a dismissal of the causes for

the reason that § 1640 of Crawford & Moses' Digest had not been complied with. That section reads as follows:

"Filing copies of findings. The Corporation Railroad Commission shall file a copy of their findings and decree with the Secretary of State, the Attorney General, the circuit clerk of the county wherein such decree is granted, and shall serve notice upon defendant railroad company by delivering a copy of its findings and decrees to the nearest local station agent, and by sending by registered mail a copy to the superintendent, general manager, lessee or operator of such railroad or railroad company."

It is insisted that, until this section requiring the Railroad Commission to file a copy of its findings and decree, is complied with as provided in said section, the order of the Railroad Commission could not become effective.

Section 1638 of Crawford & Moses' Digest provides for petitions. Section 1639 provides for inspections. It requires the Corporation Commission to make personal inspection of conditions, make investigation, take testimony, and provides that the findings of the commission shall be binding upon all railroads within the State of Arkansas. Then follows the section above quoted.

The Railroad Commission, under § 1639 of Crawford & Moses' Digest, can make the inspection and investigation, make its findings, and file them as above mentioned, without giving any notice to anybody. If it does that, of course it would then have to give notice to the railroad company of what it had done. But the sections referred to by appellant, requiring the commission to file a copy of its findings, are wholly unnecessary in this case, because, instead of making the investigation and filing copies, the Railroad Commission had a hearing, at which both appellants were present and participated in the trial or hearing.

Section 1641, providing a penalty for violation of the order of the commission, contains this proviso: "pro-

vided, no order for doing anything hereinabove provided shall be made by such commission until all parties concerned shall have received ten days' notice of such proposed change.''

It is undisputed that the appellants had the ten days' notice. There is no controversy about that. They not only had the notice, but they were present, as we have said, and defended, and both sides introduced evidence. When there was a finding against them, they appealed to the circuit court, and then to this court, where the judgment of the circuit court was affirmed.

Appellant calls attention to and relies on a statement in 20 R. C. L., 343. In § 6 of the same article in R. C. L. and in the same volume, following the section quoted by appellant, is the following: ''Generally a person can be said to have notice of a fact only when it is actually communicated to him in such a way that his mind could and did take cognizance of it. And of course, when a person knows of a thing he has 'notice' thereof, as no one needs notice of what he already knows. While extrajudicial proceedings, or proceedings without jurisdiction, do not operate as constructive notice, yet express notice obtained from such proceedings operates the same as notice obtained in any other manner.''

In 21 R. C. L., under the head of ''Process,'' the questions of the nature, issuance, requisites and validity of the process are discussed, and, among other things, it is stated on page 1263: ''But notice is for the sole benefit of the defendant to afford him an opportunity of being heard on the claim or the charges made against him. It is not required for the protection of the plaintiff. Moreover, a party may waive his right to have a suit begun against him by process, and he does so by making a voluntary appearance, or by authorizing another to appear for him.''

The only purpose of the sections of the statute relied on by appellants is to give the appellants notice so that they may have a hearing. And the proof in this case

shows not only that they had notice, but that they were both present, participated in the hearing, introduced evidence, and could not have been prejudiced in any way. The appellants in this case have no right to insist on filing the papers with the Attorney General, Secretary of State, and circuit clerk. They had a right to notice and hearing; an opportunity to be heard in court. See *Ghriest* v. *Railroad Commission of California,* 170 Cal. 63, 148 Pacific 195; *Seward* v. *Ry. Co.,* 17 N. M. 557, 131 Pac. 980; *Miami* v. *Corporation Commission,* 95 Okla. 57, 219 Pac. 126; *Lane* v. *Levinson,* 91 Maine 292, 39 Atl. 999; *Dist. of Columbia* v. *Moulton,* 182 U. S. 576, 21 S. Ct. 840; *Hammond* v. *Gilmore,* 14 Conn. 479.

It is next contended by the appellants that the statute under which the informations were filed is highly penal in its nature, and that this court, in 125 Ark. 45, 187 S. W. 1064, said: "Courts have always been opposed to the enforcement of penalties except to the extent necessary to secure the manifest object of their infliction. For this reason penal statutes are construed strictly."

The manifest object of the infliction of the penalty here, or the manifest object in making the order of the Railroad Commission, was to compel the railroad companies to provide sheds for the protection of passengers. And, although proceedings to force the railroad companies to do this were begun in December, 1925, and the decision of this court affirming the Railroad Commission was March 26, 1928, no effort has been made on the part of either appellant to comply with the order. They were present at all the hearings, knew of the order, and refused to comply with it, and admit in this proceeding that they have not complied with it.

Appellants call attention to 46 C. J. 552, and rely on the law as there stated. The section quoted and relied on by appellant is § 40, on page 552, and following that, § 52 reads as follows: "A person for whose benefit or protection a notice should be given may waive the same, but he cannot waive notice so as to affect the rights of third persons."

Appellants also call attention, in this connection, to *Chicago & N. W. Ry. Co.* v. *Board of Sup'rs,* 182 Ia. 60, 162 N. W. 868. This is a drainage case, and the statute in that case provided for two notices, but the statute also provided for a hearing. The railroad company was present at the hearing, and could have taken an appeal, but did not do so, and the court in that case held that the notice was sufficient, and affirmed the case against the railroad company, stating, in effect, that it was not only in accord with the decisions of the Iowa court, but practically all other courts. It was contended in that case that the proceeding was a taking of appellant's property without due process of law, and the court said: "The sufficiency of notice and of opportunity of the property owner to be heard, to constitute due process of law, is a question that has had the attention of every court of the country, and, if any one thing concerning the law of taxation can be said to be settled beyond doubt, it is that: "If provision is made 'for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question, what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law.' "

In the instant case a provision was made for notice and hearing; notice was given to the railroad company; it was present at the hearing, introduced evidence, appealed to the circuit court, where it appeared again, and then appealed to this court. And, under the rule announced in the case relied on by appellant, the appellants in this case had ample notice, and the contention that the case should have been dismissed because of the failure to file notice elsewhere is without merit. In the next case cited by appellants, *Chicago N. W. Ry. Co.* v. *Hamilton Co.,* 182 Iowa 60, 165 N. W. 390, there is no question of notice at all, but this was also a drainage case, and was affirmed by the Iowa court. It does not, in fact, decide anything with reference to notice.

It is next contended by appellants that this court affirmed the judgment of the Pulaski Circuit Court with

certain modifications. We do not agree with appellants in this contention. There was no modification of the order by this court. This court said: "This is an appeal from an order of the circuit court of Pulaski County, Second Division, affirming an order of the Railroad Commission requiring appellants to erect umbrella sheds along the tracks of each of the railroads at Hoxie, where they intersect, from the depot jointly used by them to the place where the trains stop to discharge and receive passengers." *St. Louis-S. F. Ry. Co.* v. *Albright,* 176 Ark. 762, 4 S. W. (2d) 911.

That was the order of the Railroad Commission and the order of the circuit court. The order required them to erect sheds. The opinion goes on to recite that it is shown that certain of the appellants' trains would have to make two stops, because they would have to make one stop to take water and then another for unloading and loading passengers. The court further said, on page 765: "We think it the clear and reasonable duty of appellants to stop their trains at the depot, or else build umbrella sheds for the protection of the passengers, who are compelled to come and go one hundred and fifty yards in order to board the trains or reach the depot." And, because of this statement in the opinion of the court, it is contended that it modified the order of the Railroad Commission. But just below this statement is the following: "The requirement of the construction of necessary facilities in the operation of the business of a public carrier is in no sense taking its property without due process of law. The contention that the order to build the sheds will unnecessarily burden interstate commerce is without foundation in fact. * * * We cannot agree that there is no necessity for the sheds. The record reflects the necessity for them in order to protect passengers from the elements, because appellants stop certain of their passenger trains an unreasonable distance from the depot for the reception and discharge of passengers."

Of course, if they stopped at the depot where passengers would be protected, there would have been no neces-

sity for sheds and no necessity for the order, but they did not do that; they claimed that it is impracticable to do so, and, for that very reason, the order was not to stop the trains, but to build the sheds, and there was no modification by this court of the order of the Railroad Commission or order of the circuit court.

It is contended by appellants that this court had authority to modify, and they base that argument on a statement of the statute reading as follows: "And in such case the appeal to the Supreme Court shall be governed by the procedure, and reviewed in the manner applicable to other appeals from such circuit court, except that any finding of fact by the circuit court shall not be binding on the Supreme Court, but the Supreme Court may and shall review all the evidence and make such findings of fact and law as it may deem just, proper and equitable." Section 21, act 124 of the Acts of 1921.

Under that, what is this court to do? This court may and shall review the evidence. It did that in this case, and held that the evidence was sufficient to justify the order to build the sheds. This was the finding of fact that it made. There cannot be any controversy about it nor any misunderstanding about it if the whole opinion is read.

There is no contention either in this case or the other that the trains were stopped at the depot, but it is contended by appellant, because the prosecuting attorney put another count in his information, charging the railroad companies with failure to stop the trains, and that, because there was no proof that they did not stop the trains, they are entitled to the presumption that they have complied with the order of the commission because they stopped the trains. In the first place, the order of the commission and the judgment of the courts was to construct sheds and not to stop their trains, and there was no occasion for the second count in the information. It was not based on any order of the commission or of the court. They were not fined under this count, and this count passes out of the case.

Appellants say: "We know of no law up to this time under which the State can bring even railroad corporations into court under four hundred cases against them and secure a conviction or judgment thereon under any statute, penal in its nature or otherwise, without having some evidence as a predicate for such finding or judgment."

Certainly they will not contend that there is not ample evidence to support the claim that the appellants violated the order of the Railroad Commission in its failure to construct the sheds. The order was made to construct the sheds, and it is admitted in this case that the sheds have not been constructed. There was no order about stopping trains; hence no order for stopping trains could be violated. This also disposes of the third and fourth contentions of appellants.

It is next contended that the justice of the peace had no jurisdiction. The statute upon which the information is based expressly makes the failure to comply with the order a misdemeanor, and it is also expressly stated that every day of such violation shall constitute a separate offense. This is not a civil suit, but it is a prosecution for the violation of the order of the commission, and the statute provides for a fine, and the minimum fine was assessed against each of the parties.

Section 8568, referred to by appellants, makes it the duty of the railroad company to blow a whistle or ring a bell, and provides for a $200 penalty for negligence. It provides also that one-half of the penalty shall go to the informer and the other one-half to the county. In other words, it is a civil action for a penalty. The statute in that case did not make it a misdemeanor, and it did not provide for the payment of a fine, but expressly stated that there should be a penalty of $200 for every neglect.

Section 6645 of Kirby's Digest is quoted in support of the theory that only one fine can be assessed against appellants. That statute did not provide that each day should constitute a separate offense. Moreover, it made

the parties liable to the party aggrieved. This question was settled by a decision of this court in the case of *St. L. I. M. & S. R. Co.* v. *State*, 99 Ark. 1, 136 S. W. 938, and settled against the contention of the appellants.

We therefore hold that the appellants, having notice and being present at the hearing, are bound by the order made by the Railroad Commission and affirmed by this court; that there was no modification of the judgment of the circuit court or the order of the Railroad Commission; that the findings of fact by the Supreme Court were exactly the same as the findings by the lower court; that the statute makes the failure to erect the sheds a misdemeanor; that is, a failure to comply with the order of the commission is a misdemeanor, and the statute makes each day's failure a separate offense. There is no contention that the sheds were built. That is the only order the commission made.

The judgment of the circuit court is therefore affirmed.

Smith, J., (dissenting). It appears, from the former opinion involving the duty of the railroad companies to the traveling public at Hoxie (176 Ark. 761, 4 S. W. (2d) 910), that the order of the Railroad Commission was resisted upon five grounds, which we there stated as follows:

"First, that authority was not conferred upon the Railroad Commission by statute to order railroads to construct umbrella sheds over their platforms, or, to put it differently, that the Railroad Commission was without jurisdiction to order appellants to build sheds over their platforms from the depot to where they stopped certain of their trains to receive and discharge passengers; second, that the order was arbitrary and unreasonable, there being no necessity shown for the construction of the sheds; third, that the facilities already furnished are adequate; fourth, that the order of the Commission will deprive the railroads of their property without due process of law and in violation of § 1, article 14, of the Fe-

deral Constitution; fifth, that the order for the construction of these sheds is a burden on interstate commerce, and void.''

The conditions existing at Hoxie were reviewed and the fact was found that these conditions required that the railroad companies afford passengers protection from inclement weather who wished to change trains at Hoxie while they were making this change, and we held that the testimony offered in support of the objections to this order made by the railroad companies set out above were not sufficient to make the order unreasonable, and void on that account.

We recognized, however, that protection to the traveling public could be given in either of two ways, one being to build the sheds, the other to make a second stop of the trains, and in this connection we said: ''It is true that the testimony reflects that a union depot has been built at this point, modern and adequate for the protection of passengers when once in it. The argument that adequate facilities have been furnished because such a depot has been constructed does not meet the situation at Hoxie. It would, if the trains all stopped beside or near the depot where the passengers could reach it without exposing themselves to inclement weather. The depot, however, can furnish no protection to passengers who are compelled to go a distance of one hundred and fifty yards before they can board a train, or go that distance after debarking to reach the depot. The protection required against the elements is protection afforded at the place of getting on and off trains. We think it the clear and reasonable duty of appellants to stop their trains at the depot, or else build umbrella sheds for the protection of the passengers, who are compelled to come and go one hundred and fifty yards in order to board the trains or reach the depot.''

It is obvious that the two methods were equally efficacious to protect the traveling public, and we said so, and it should be assumed that the end desired was not to

burden the railroad companies, because the power existed to do so, but rather to protect the traveling public.

The railroad companies, after the former opinion was delivered, were left with no right to say that protection was not needed by the traveling public; they were left with the discretion only of affording this protection in one of two ways.

That this court had the power thus to modify the order of the Railroad Commission is not denied; indeed, the majority quotes the section of the act which expressly conferred this authority. It reads as follows: "Section 21. * * * And in such case the appeal to the Supreme Court shall be governed by the procedure, and reviewed in the manner applicable to other appeals from such circuit court, except that any finding of fact by the circuit court shall not be binding on the Supreme Court, but the Supreme Court may and shall review all the evidence and make such findings of fact and law as it may deem just, proper and equitable * * *." Act 124 of the Acts of 1921, page 177.

If it was not the purpose of this court to modify the order of the Railroad Commission in the respect mentioned, then we incorporated into the opinion a very misleading statement as to the duty of the railroads, and we submit that a fair interpretation of that opinion is that the railroads might discharge their duty to the traveling public either by building sheds or stopping the trains at an appropriate place, to-wit, beside or near the depot, where the passengers could reach it without exposing themselves to inclement weather. It is true the opinion concludes with the statement that the judgment of the circuit court was affirmed, but no practice is more common than that of modifying judgments and affirming them as modified.

That the opinion was so interpreted even by the law officers of the State engaged in enforcing the order as giving the railroads the option of building sheds or of stopping the trains at an appropriate place is shown by

the character of the prosecutions which were commenced against the railroad companies.

The informations filed in the justices' courts were identical in every respect except as to allegation of the dates upon which the order had been violated. Each of these informations contained two counts, the first charged the sheds had not been erected, and then, to negative the anticipated defense, that, although the sheds had not been erected, the trains had been stopped and the modified order thereby complied with, a second count was added which charged that the trains had not been stopped. The appearance of this second count in the information is explainable only on the assumption that it was thought the order might be complied with in either of two ways, but had not been complied with in either way.

No testimony was offered at the trial from which this appeal comes to the effect that the trains were not stopped, as our opinion said they might be, but it is here insisted that the second count was surplusage. It is not conceded by the railroad companies that the trains were not stopped. On this count there is an entire absence of testimony. Under the most elementary rules of criminal evidence, this burden was not on the railroad companies, and as the State did not offer any testimony on the second count the judgments are erroneous, if, in fact, the railroad companies had the option of stopping the trains, instead of building the sheds, as we think we have shown they had.

In our opinion the judgments appealed from are erroneous for the additional reason that the Railroad Commission had not sufficiently complied with the law in the matter of the promulgation of its order to make it such an order that its non-observance constituted a violation of law.

The power of the Commission is derived from the act of which § 1640, C. & M. Digest, is a part and which the majority opinion quotes. By reference to this act it will be seen that the Commission must, not only conduct a hearing under other sections of the act which the ma-

jority cite, but, having had the hearing and having made what was deemed to be an appropriate finding, this finding must be filed, and the Commission has not sufficiently complied with the law to give its findings the force and effect of a statute until these findings have been filed as required by the act. The requirements of § 1640, C. & M. Digest, are that the Commission "shall file a copy of their findings and decrees with the Secretary of State, the Attorney General, the circuit clerk of the county wherein such decree is granted * * *." Until this is done, the law has not been complied with, and until the law has been complied with an essential requirement to give the findings the effect of law remains unperformed. It will not do to say that this filing was unnecessary and would accomplish no useful purpose. The General Assembly, and not this court, is the judge of that question. The General Assembly, in clothing the Commission with the power to make the order, had the right to say under what conditions that power might be exercised and when the violation of an order made pursuant to this power should become and be a violation of law.

The argument is made in the majority opinion that a person entitled to notice may waive the right to have the notice given, and that he does waive this right if, without demanding that notice be given, he becomes a party to a proceeding which could be had only after notice if that right were not waived. We do not question this statement of the law, but this is not the question we present. In addition to the authorities cited in the majority opinion to the effect that the requirement of notice may be waived, others from our own court could be cited. All the cases on that subject are to the same effect, but the cases cited do not relate to the question whether a rule, regulation or order of a governmental agency, acting under a delegated power of the General Assembly, takes on and has the force and effect of a statute where the statute under which the agency acted has not been complied with. Only the General Assembly has the power, under our system of government, to declare

what shall be crimes and misdemeanors throughout the State, and while there may be delegation of authority to some agency to make rules and regulations and findings the violation of which is unlawful, this result is effected only when this agency has fully complied with the law delegating the power, for then, and not until then, has the will of the General Assembly been executed. Indeed, it is true of the Acts of the General Assembly itself that, if it is provided in an act that it shall be effective after a certain time, or under certain conditions which are prescribed, the act is not the law until the time limited has expired or the applicable conditions have arisen. *Summers* v. *Road Imp. Dist. No. 16*, 160 Ark. 371, 254 S. W. 696; *Miller* v. *Witcher*, 160 Ark. 479, 254 S. W. 1063.

With all deference to the majority we say, after examining the authorities cited, that none of them deals with the question here presented, that is, when a rule, regulation or order of a governmental agency, to which a *quasi*-legislative duty was delegated, becomes effective as a law and its violation punishable as in case of the violation of a statute.

It is settled law that, while the General Assembly may not delegate the authority to legislate, it may constitute an agency to make such regulations as are necessary to protect the public weal in certain cases, and may provide that violations of these regulations may be punishable by criminal prosecutions; but it is equally as well settled that such regulations are not given the force of laws until the agency promulgating the rules or findings has performed the requirements of the statute in their promulgation. *Reading* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Snow* v. *Riggs*, 172 Ark. 835. These legislative requirements take many forms, as that the rules, regulations, findings, or requirements be published in a certain way, or for a definite time, or that they become effective after a certain date, or that they be recorded in a particular way, or be filed in a certain place, and these requirements are conditions precedent, whether they are expressly declared so to be or not.

Section 1640, C. & M. Digest, from which we have quoted, requires that the findings of the Railroad Commission be filed, and designates where they shall be filed, and the power does not inhere in the courts to say that the performance of this duty is not essential if, as in this case, the party affected has notice of the findings. This is true, because it is not the violation of the findings which is made unlawful; the act made unlawful is the violation of a finding which has been filed as the law requires.

This principle has been applied in many cases, and a recent application of it is found in the opinion of the Supreme Court of the United States in the case of *Wichita Railroad & Light Company* v. *Public Utilities Commission of the State of Kansas,* 260 U. S. 48, 43 S. Ct. 51.

That case arose out of an order of the Public Utilities Commission of the State of Kansas, which corresponds in its functions to the Railroad Commission of this State. In that case the rate charged for electrical energy was changed. This was done pursuant to the power conferred by § 13 of the act creating the Utilities Commission. This section, as it appears in the opinion of the Supreme Court of the United States, *supra,* reads as follows: "It shall be the duty of the commission, either upon complaint or upon its own initiative, to investigate all rates, * * * fares * * * and if after full hearing and investigation the commission shall find that such rates * * * are unjust, unreasonable, unjustly discriminatory or unduly preferential, the commission shall have power to fix and order substituted therefor such rate or rates * * * as shall be just and reasonable."

This act confers the power to make findings as to rates which are just and reasonable, but it will be observed that the Kansas act does not require, as our act does, that these findings be reduced to writing and be filed or otherwise promulgated. If the Kansas statute were liberally construed, as the majority have done in the case of our statute, it could have been said that the

order of the Utilities Commission changing the rate necessarily implied a finding that the rate changed was either too much or too little; indeed, the opinion of the Court of Appeals states that the Commission must have found that the rate charged was not compensatory.

The Federal District Court enjoined the execution of the findings and order of the Utilities Commission, but on the appeal to the Circuit Court of Appeals (268 Fed. 37) the decree of the District Court was reversed and it was held, in an opinion written by our own late deceased and much lamented Judge Trieber "that the Commission, when making the order complained of, made no special findings of fact, is wholly immaterial, as there is nothing in the act creating the Commission and defining its duties and powers requiring it."

The learned judge further said: "*Springfield Gas & Electric Co.* v. *Barker* (D. C.) 231 Fed. 331, 344, and *Public Utilities Commission* v. *Springfield Gas Co.*, 291 Ill. 209, 125 N. E. 891, relied on by counsel for appellee, are not applicable, as the statutes of Missouri and Illinois expressly provided that the Commission shall make and file its findings of fact in writing. In the Barker case the opinion quotes that section of the Missouri statutes. There is no such provision found in the Kansas statute. The only act in writing required by the statute is found in § 16 of the act (Laws 1911, c. 238), which provides: 'All orders and decisions of the Public Utilities Commission whereby any rates * * * are altered, changed, modified, fixed or established, shall be reduced to writing, and a copy thereof, duly certified, shall be served on the public utility or common carrier affected thereby, by registered mail.' "

As our statute, like those of Missouri and Illinois, requires a finding in writing, and also requires that this finding be filed, the same distinction in regard to our statute would, no doubt, have been made by the learned judge had it been involved, instead of the Kansas statute, as was there made in regard to the statutes of Missouri and Illinois.

An appeal was duly prosecuted to the Supreme Court of the United States, where, in an opinion by Chief Justice Taft, the decision of the Circuit Court of Appeals was reversed, and as the opinion concretely applies the legal principle here involved we quote somewhat extensively from it. It was there said:

"The proceeding we are considering is governed by § 13. That is the general section of the act comprehensively describing the duty of the Commission, vesting it with power to fix and order substituted new rates for existing rates. The power is expressly made to depend on the condition that after full hearing and investigation the Commission shall find existing rates to be unjust, unreasonable, unjustly discriminatory or unduly preferential. We conclude that a valid order of the Commission under the act must contain a finding of fact after hearing and investigation, upon which the order is founded, and that, for lack of such a finding, the order in this case was void.

"This conclusion accords with the construction put upon similar statutes in other States. *Public Utilities Commission* v. *Springfield Gas & Electric Co.*, 291 Ill. 209, 125 N. E. 891; *Public Utilities Commission* v. *Baltimore & Ohio Southwestern R. R. Co.*, 281 Ill. 405, 118 N. E. 81. Moreover, it accords with general principles of constitutional government. The maxim that a Legislature may not delegate legislative power has some qualifications, as in the creation of municipalities, and also in the creation of administrative boards to apply to the myriad details of rate schedules the regulatory police power of the State. The latter qualification is made necessary in order that the legislative power may be effectively exercised. In creating such an administrative agency the Legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined and show a substantial compliance therewith to

give validity to its action. When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective.

"It is pressed on us that the lack of an express finding may be supplied by implication and by reference to the averments of the petition invoking the action of the Commission. We cannot agree to this. It is doubtful whether the facts averred in the petition were sufficient to justify a finding that the contract rates were unreasonably low; but we do not find it necessary to answer this question. We rest our decision on the principle that an express finding of unreasonableness by the Commission was indispensable under the statutes of the State."

It will be observed that the holding, that an express finding to give the order of the Utilities Commission effect was made in the construction of a statute which did not provide that the finding should be a condition precedent, nor did the Kansas statute provide, as does ours, that the finding should be promulgated by filing it in any particular place. The principle involved and applied by the Supreme Court of the United States was that an agency discharging a delegated power could bind persons affected by its order only when it had exercised its power in the manner provided by the statute delegating the power. If that principle were applied here, as we think it should be, it would result in holding that, as the Railroad Commission had not complied with the law in promulgating its finding by filing it as required by law, a violation of its finding was not an offense, and, as it was admitted at the trial from which this appeal comes that the finding had not been filed as required by law, it is our opinion that the judgments imposing fines should be reversed.

The CHIEF JUSTICE and Mr. JUSTICE KIRBY concur in the views here expressed.