CHICAGO, MILWAUKEE & ST. PAUL RAILWAY
COMPANY *v.* STATE PUBLIC UTILITIES COM-
MISSION OF ILLINOIS.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 148.    Argued December 5, 1916.—Decided January 8, 1917.

An order of a state commission fixing a rate for transportation in purely
intrastate commerce will not be disturbed upon the grounds that
it produces discrimination against interstate commerce, interferes
with administrative provisions of the Interstate Commerce Act,
and intrudes upon the jurisdiction of the Interstate Commerce Com-
mission, where the relations of the rate fixed to interstate commerce
have not been determined by the Interstate Commerce Commission
and are not established by the evidence, and where the certainty
that it will operate to the injury of those engaged in such commerce
is not made to appear.

268 Illinois, 49, affirmed.

THE case is stated in the opinion.

*Mr. O. W. Dynes,* with whom *Mr. Burton Hanson* was
on the briefs, for plaintiff in error.

*Mr. M. F. Gallagher,* with whom *Mr. Everett Jennings*
was on the briefs, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the
court.

Error to review a judgment of the Supreme Court of
Illinois sustaining an order of the State Public Utilities
Commission made in a proceeding brought by Poehlmann
Bros. Company against plaintiff in error, here called the
railway company.

Poehlmann Bros. Company is an Illinois corporation,

engaged in growing and selling flowers and has its green-
house at Morton Grove, Cook County, Illinois, a station
on the railway company's line, three miles northeast of
Chicago.  Poehlmann Bros. Company uses in its green-
house about 30,000 tons of coal each year, 95% of which
is mined in Illinois, and 500 cars of manure which comes
from places in and around Chicago.  The coal and manure
move to Morton Grove over the railway which receives
them at Galewood, a station inside of Chicago.

The distance from Galewood to Morton Grove is about
12 miles and is the haul involved in this case.  There are
no joint or through rates on coal to Morton Grove from
points in Illinois or from points in other States, the rate
from Galewood to Morton Grove being a separate rate.

The rates on cars of coal to Chicago vary according to
point of origin, but in all cases the charge of the railway
company from Galewood to Morton Grove is 40 cents a
ton and is published as such, for which the railway com-
pany is alone responsible.

July 18, 1913, Poehlmann Bros. Company filed a peti-
tion with the Warehouse Commission of Illinois, prede-
cessor of defendant in error, charging that such rate of
40 cents a ton on coal and manure from Galewood to
Morton Grove was unjust and unreasonable.  After a
hearing the commission so found and that 20 cents a ton
on coal and 25 cents on manure were just and reasonable
rates and should be put into effect by the railway company.

The order was affirmed by the Circuit Court of Sanga-
mon County and subsequently by the Supreme Court of
the State.  268 Illinois, 49.

The error assigned against the order of the commission
and the judgment sustaining it is that so far as the order
relates to coal, the rates on manure not being involved,
it violates the commerce clause of the Constitution of the
United States in that: (1) The order assumes to regulate
a feature of commerce in which interstate and intrastate

commerce are commingled and after jurisdiction of that feature had been taken by the Interstate Commerce Commission, and regulates such feature of commerce differently from and inconsistently with the regulation of the Interstate Commerce Commission.   (2) It requires the railway company to discriminate against localities outside of Illinois and give preference to those inside of the State in the charges that the company makes for the same service. (3) It violates § 3 of the Interstate Commerce Act as amended by requiring the company to give unreasonable preference and advantage to producers and shippers of coal in the State and subject those outside of the State to unreasonable prejudice and disadvantage by obliging the company to charge a less rate for the transportation of coal in car-load lots between specified points on its rails when the coal originates within the State than it is lawfully permitted to charge and does charge for the same service on interstate shipments of coal.   (4) It violates § 6 of the Interstate Commerce Act as amended by requiring the railway company to charge a less compensation on car loads of coal between certain points named in tariffs on file with the Interstate Commerce Commission than the rates and charges specified in such tariffs.   (5) It violates § 13 of the Interstate Commerce Act by disregarding the right of the railway company to have the Interstate Commerce Commission investigate any complaint of the railroad commission of any State and obtain such relief as the complaint might merit.   (6) It violates § 15 of the Interstate Commerce Act which gives the Interstate Commerce Commission power over through rates and joint rates and transportation participated in by two or more carriers, the order under review seeking to regulate one factor of such through or joint rate without regard to the other.   (7) The order is unreasonable and unlawful in that the commission, without finding the through rate excessive or discriminatory or having facts before it on

which to make such finding, made the order to reduce
solely for the benefit of Illinois shippers and producers,
the transportation charges being a factor of the trans-
portation service involved that is common to interstate
and intrastate commerce and over which factor the Inter-
state Commerce Commission had previously assumed ju-
risdiction.

The case, we think, is in small compass, although on
its face and in the argument of counsel for plaintiff in
error it concerns such relation between state and interstate
rates as to make the order an interference with the latter.
The facts remove the order from such effect. The coal
that the order regulates has its point of shipment and its
point of destination in Illinois and was for transportation
for 12 miles on the lines of the railway company in the
State. But counsel say that the rate for those 12 miles,
that is for the haul from Galewood to Morton Grove, is
part of the through rate from the coal-producing districts
to Galewood, which is a station in Chicago, that such
producing districts may be inside or outside of the State,
and that the rate, therefore, may be a part of interstate
commerce as well as intrastate commerce. There hence
comes into the case, counsel contends, "a feature of com-
merce in which interstate commerce and intrastate com-
merce are commingled" and that, the interstate element
dominating, the state commission had no jurisdiction to
make its order, and it is asserted that discriminations and
preferences between shippers and localities will result
from it.

The contention based upon an interstate commerce
element in a rate, that is, the relation of interstate and
intrastate rates and their reciprocal effect, was at one time
quite formidable, but since the *Minnesota Rate Cases*, 230
U. S. 352, its perplexity arising from a conflict of powers
has been simplified. In those cases it was decided that
there is a field of operation for the power of the State over

intrastate rates and the power of the Nation over interstate rates. In other words, and in the language of Mr. Justice Hughes, who delivered the opinion of the court, "The fixing of reasonable rates for intrastate transportation was left where it had been found; that is, with the States and the agencies created by the States to deal with that subject, *Missouri Pacific Ry. Co.* v. *Larabee Mills,* 211 U. S. 612," until the authority of the State is limited "through the exertion by Congress of its paramount constitutional power" where there may be a blending of "interstate and intrastate operations of interstate carriers." But it was decided that Congress had not exerted its power by the enactment of the Interstate Commerce Act.

It is, however, said that the Interstate Commerce Commission had assumed jurisdiction of the rates at the instance of Poehlmann Bros. Company and had rendered a decision sustaining the rates that the order under review adjudges unreasonable.

There was such a complaint and the testimony taken was introduced in the present case. But the complaints are different. That before the Interstate Commerce Commission concerned coal from West Virginia. The complaint in the present case concerns coal shipped from a place in Illinois to another place in Illinois, the latter place being Morton Grove, and the rate to it from Galewood being involved. The testimony taken before the Interstate Commerce Commission happened to have material relevancy to such rate and hence was admitted in evidence. The rulings were different. It was proper for the Interstate Commerce Commission to consider the rate as part of a through rate from points outside of the State. It was equally proper for the state commission to consider it as part of the intrastate haul, and we do not think the rates were so related as to exclude the exercise of jurisdiction by the state commission.

The report of the Interstate Commerce Commission is not in the record. It is, however, quoted in the briefs of counsel, and it appears therefrom that neither the through rate nor the carriers responsible for and participating in it were before the commission. The commission said: "Considering the absence of evidence as to the reasonableness of the through rate, and the unsatisfactory evidence as to the separately established rate under attack, we must refrain from expressing any conclusion upon the reasonableness of either rate."

But a relation is asserted between the state and interstate haul because it is said to be manifest that the order of the state commission gives commercial advantages to shippers and producers of coal in Illinois over shippers and producers outside of the State. But there is nothing in the record that justifies the confidence of the assertion. There are too many factors to be considered for such off-hand declarations to be accepted. Some relation we may admit between the state and interstate service, but the evidence does not bring it within that certainty and precision of influence that induced the decision in *Houston & Texas Ry. Co.* v. *United States,* 234 U. S. 342, but leaves it controlled by the *Minnesota Rate Cases, supra; Oregon R. R. & Nav. Co.* v. *Campbell,* 230 U. S. 525, and *Louisville & Nashville R. R. Co.* v. *Garrett,* 231 U. S. 298. Therefore, the order is not subject to the charges against it and §§ 3, 13 and 15 of the Interstate Commerce Act have no application.

The motion to dismiss is denied. The judgment is

*Affirmed.*