(No. 25300.—

THE ROCKWELL LIME COMPANY *et al.* Appellees, *vs.* THE COMMERCE COMMISSION *et al.*—(THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY *et al.* Appellants.)

*Opinion filed February 13, 1940—Rehearing denied April 3, 1940.*

J. N. DAVIS, BRUCE S. PARKHILL, CARSON L. TAYLOR, P. F. GAULT, and I. C. BELDEN, (C. S. JEFFERSON and WILLIAM T. FARICY, of counsel,) for appellants.

LAWRENCE W. MOORE, and THOMAS B. LANTRY, for appellees.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

The Rockwell Lime Company and seven other companies filed a complaint with the Illinois Commerce Commission seeking reparation or refund of freight over-charges from numerous carriers, including the Chicago and Northwestern Railway Company, and the Chicago, Milwaukee, St. Paul and Pacific Railroad Company. A motion to dismiss interposed by the two named railroad companies, hereinafter referred to as the defendants, was sustained, and the commission dismissed the complaint. The complainants' petition for rehearing was denied. Upon appeal, the circuit court of Cook county reversed the commission's order and remanded the cause, with directions to award restitution to the complainants. From this order the defendants have prosecuted an appeal. The jurisdiction of this court has been properly invoked. *Peoples Fruit Ass'n v. Commerce Com.* 351 Ill. 329; *Consumers Coffee Stores v. Commerce Com.* 348 id. 615; *County of Henderson v. Chicago, Burlington and Quincy Railroad Co.* 320 id. 608; *People's Gas Light and Coke Co. v. City of Chicago,* 309 id. 40; *Public Utilities Com. v. Bartonville Bus Line,* 290 id. 574.

The following relevant facts appear from the evidence: August 10, 1925, the defendants, together with more than forty other Illinois carriers, filed with the Commerce Commission a tariff denominated as "Agent B. T. Jones tariff, Ill. C. C. No. 171," which proposed to change numerous intrastate rates applicable to the transportation of sand,

gravel and crushed stone from various Illinois producing points, among others, those at which the complainants were engaged in operations, to the Chicago switching district. The complainants are producers of sand and gravel, having plants located in Illinois on the lines of the defendants within a 50-mile radius of Chicago, sometimes referred to as the "inner zone," in contradistinction to the "outer zone" which embraces producing points 51 to 100 miles from Chicago. It was sought to accomplish the change by canceling tariffs, rates and charges on file with the commission then in effect, and substituting the rates contained in the Jones tariff, the proposed new rates to become effective September 10, 1925. So far as material to this inquiry, the Jones tariff proposed two major changes in rates from complainants' plants to the Chicago district. The single "line haul" rate covering the transportation of shipments by the defendants from complainants' plants to deliveries on the lines of those carriers in the Chicago district was proposed to be made 65 cents per ton, thereby superseding the current rate of 60 cents per ton which had been in force since July 31, 1922. Secondly, the "switching" charges for transporting shipments originating from the junction points of the two defendants in the Chicago district with connecting carriers to points of delivery on the lines of the latter in the district were proposed to be made 30 cents per ton (approximately $15 per car) in addition to the "line haul" rate, canceling the existing charges ranging from $3.60 to $8.50 per car. In short, the Jones tariff proposed an increase in "line haul" charges of 5 cents per ton or about $2.50 per car, apart from the increase in "switching" charges. Prior to the effective date of the new rates described in the Jones tariff, the Commerce Commission, by its order in proceeding No. 15539 entered on August 29, 1925, and by supplemental orders, suspended the Jones tariff and rates until February 15, 1927. Defendants, and,

so far as the record discloses, no one else, challenged the validity of the successive suspension orders. The commission's investigation and hearing with respect to the propriety of the proposed changes in rates set forth in the Jones tariff was joined with a complaint filed in the meanwhile in No. 15878, *Chicago Gravel Co.* v. *Atchison, Topeka and Santa Fe Railway Co.* November 30, 1926, an order entered in the consolidated cause recited, in part: "We further find upon this record that the rates published by the carriers are not justified and that the tariffs should be permanently canceled and stricken from the files of the commission. * * * It is therefore ordered that the proposed changes in rates for the transportation of sand, gravel, and crushed stone * * * be, and the same are hereby canceled, annulled and set aside and stricken from the files of the commission." It is true that in the *Chicago Gravel case,* the 65-cent rate was found to be reasonable as applied to shipments made subsequent to February 15, 1927,— not to the shipments in controversy prior to the day named. During the period between September 10, 1925, and February 15, 1927, the defendants exacted and collected the increased rates and charges for the transportation of complainants' carload shipments of sand and gravel from their plants and properties at or near South Elgin, Elgin, Carpentersville, Algonquin, Crystal Lake, and Hammonds, Illinois, the points of origin served by the two defendants, to all Illinois destinations on the lines of the defendants in the Chicago switching district as published in the tariffs suspended by the Commerce Commission in its order No. 15539. It thus appears that between September 10, 1925, and February 15, 1927, the defendants did not comply with the commission's suspension order but collected a rate of 65 cents per ton upon shipments from complainants' plants destined to deliveries in the Chicago district on the lines of the defendants, and where destined to points on connecting

lines in the Chicago district, collected, as agent for the latter carriers, an additional switching charge of 30 cents per ton.

By their complaint filed September 21, 1928, complainants alleged that the rates and charges exacted for the transportation of their carload shipments of sand and gravel were illegal and violated sections 32, 36 and 37 of the Public Utilities act. The gist of the complaint was that the "line haul" rate of 65 cents per ton, and other charges, exceeded the rates and charges legally applicable and in effect at the time the shipments were made, and that the defendants should, accordingly, be required to refund the overcharges. Defendants, by their amended answer and motion to dismiss, averred that in *Chicago Sand and Gravel Producers Co.* v. *Director General,* 64 I. C. C. 37, the Interstate Commerce Commission, by its order, as subsequently interpreted and applied, (96 I. C. C. 325, and 118 I. C. C. 633,) required them to maintain rates on sand and gravel to the Chicago switching district from the outer zone, interstate and intrastate, on a parity, and rates from the inner zone on a differential basis not more than 5 cents a ton below rates from the outer zone. This order, it is averred, became effective January 5, 1922, and provided that it should continue until the further order of the Federal commission, and that it is and has been since its effective date in full force and effect. The defendants averred further that if the relief sought by the complainants should be granted a retroactive difference would be created in rates between the outer zone, on the one hand, and the inner zone, on the other, exceeding 5 cents per ton, the difference being in favor of the inner zone, which was prohibited by the Interstate Commerce Commission's order of January 5, 1922. Defendants claimed, accordingly, that the complaint asked the State commission to transcend its jurisdiction by nullifying an order of the Federal commission in contravention of the commerce clause of the Federal constitution and the Interstate Commerce act. They did not directly

challenge the authority of the Illinois commission with respect to the Jones switching charges of 30 cents per ton. Replying, the complainants alleged that if an order had been entered by the Interstate Commerce Commission, as averred by defendants, it did not have the legal effect of depriving the Illinois Commerce Commission of jurisdiction. In particular, the replication alleged that the Interstate Commerce Commission made no finding of discrimination against interstate commerce by the Illinois inner zone intrastate rates then in effect.

The Commerce Commission reached the conclusion that the Interstate Commerce Commission did, in fact, assume jurisdiction over the traffic involved in this litigation. To support this finding it referred to its own order in docket 10666, which cited the decision in *Chicago Gravel Co.* v. *Atchinson, Topeka and Santa Fe Railway Co.* 118 I. C. C. 633, decided November 30, 1926. The Federal commission in the order last mentioned adverted to its earlier order in the *Chicago Producers case,* issued September 23, 1921, (64 I. C. C. 37) and, in a footnote to the order, answered the contention that the finding and order did not apply to intrastate traffic from zone I (inner zone) by declaring such a construction strained and unnatural. In docket 10666 the Illinois commission, in considering the question of jurisdiction over the intrastate rates on sand and gravel from the inner and outer zones to points in the Chicago switching district, said: "On September 23, 1921, the Interstate Commerce Commission entered its order in the *Chicago Producers case,* 64 I. C. C. 37, and held that the Illinois intrastate rate of 3.5 cents (65 cents per ton) applied for the transportation of sand and gravel from Illinois shipping points located in the Outer Zone to points of destination in the District resulted in undue discrimination against interstate commerce from Wisconsin shipping points located in the Outer Producing Zone to the same points of destination and directed the defendant carriers to establish a rate not

in excess of 3.75 cents for the intrastate and interstate transportation of sand and gravel from Outer Producing Zone to the District. The said order further provided that the rates from points in the Inner Producing Zone on the Northwestern and on the Milwaukee to the District should be maintained on a differential of 0.25 cents under the rates contemporaneously in effect on sand and gravel from the Outer Producing Zone to the District. In this order the Interstate Commerce Commission required the Northwestern and Milwaukee to establish and make effective on or before January 5, 1922, the changes in rates which had been found necessary to prevent undue discrimination. Tariffs were filed by the Northwestern and the Milwaukee in compliance with that order, establishing rates effective January 5, 1922. Therefore, it is apparent that after rates were established in compliance with the said order of the Interstate Commerce Commission in which intrastate rates as well as interstate rates were prescribed for the transportation of sand and gravel from both the Inner Producing Zone and the Outer Producing Zone to the District, that Commission assumed jurisdiction over the intrastate rates herein assailed, and that from and after January 5, 1922, the Interstate Commerce Commission acquired jurisdiction over the said intrastate rates." Copies of the orders in No. 10666 and 118 I. C. C. 633 were introduced in evidence. The order in the *Chicago Producers case* was not, however, put in evidence and the commission did not purport to rest its conclusion on the order itself but rather on an interpretation of the order in a later decision of the Interstate Commerce Commission (118 I. C. C. 633) and its own interpretation of the order in docket 10666. Our commission proceeded to find that the Interstate Commerce Commission, in the exercise of its statutory powers, assumed jurisdiction of the rates on intrastate shipments of sand and gravel from the "inner" and "outer" zones to destinations within the Chicago switching district; that, thereafter, the Interstate Com-

merce Commission entered an order prescribing the rates and relationships to be observed on such traffic, and that the order continued in effect during the period involved herein, namely, from September 10, 1925, to February 15, 1927. Specifically finding that the Interstate Commerce Commission had jurisdiction of the rates attacked by complainants, and that it, the Illinois Commerce Commission, did not have jurisdiction to award reparation in this proceeding and thereby override the order of the Federal commission, our commission denied the relief sought, dismissed the cause and ordered it stricken from the docket.

The circuit court found that the Illinois commission did have jurisdiction of the subject matter; that its order did not contain sufficient facts to support it; that the decision and order in the *Chicago Producers case,* having neither been offered nor received in evidence, "factual evidence and findings in the latter action was poverty to this cause unless introduced or stipulated;" that there was no competent evidence showing that the Interstate Commerce Commission had assumed jurisdiction over or adjudicated intrastate rates from the "inner" zone, or that the tariffs on file for the intrastate "inner zone" area and switching charges which the Jones tariff sought to cancel caused any undue or unreasonable advantage, preference or prejudice to interstate commerce or persons shipping therein; that the Jones schedule of charges for the period in question was ineffective by virtue of the suspension and resuspension orders issued by the Illinois Commerce Commission; that the pre-existing tariffs and rates were in effect; that any charges in excess thereof were illegally exacted, and that the commission should have so found and directed the defendants to make restitution.

Here, defendants resisted the complaint on the ground that the Interstate Commerce Commission had exercised its prerogative by finding that the rate of 60 cents per ton on intrastate shipments within the Chicago switching district

was discriminatory to interstate commerce. Complainants, on the other hand, maintain, first, that defendants failed to prove the existence of such an order, and, second, even if proved, that it did not have the legal effect ascribed. The issue presented to the commission was simply whether the correct and legal tariff rate had been applied. If the Interstate Commerce Commission order is applicable, defendants were entitled to exact 65 cents per ton on the shipments of sand and gravel. If not, and, on the other hand, the suspension orders of the Illinois Commerce Commission were in effect, the complainants' claim should have been sustained and the over-charge of 5 cents per ton refunded.

Paragraph 4 of section 13 of the Interstate Commerce Commission act (U. S. C. A. title 49, (Transportation) sec. 13 (4)) describes the circumstances under which the Interstate Commerce Commission may assume jurisdiction over intrastate rates, as follows: "Whenever in any such investigation the commission, after full hearing, finds that any such rate * * * causes any undue or unreasonable advantage, preference, or prejudice as between persons or localities in intrastate commerce on the one hand and interstate or foreign commerce on the other hand, or any undue, unreasonable, or unjust discrimination against interstate or foreign commerce, which is forbidden and declared to be unlawful it shall prescribe the rate * * * thereafter to be charged * * * in such manner as, in its judgment, will remove such advantage, preference, prejudice, or discrimination, * * * the law of any State or the decision or order of any State authority to the contrary, notwithstanding." The power of the Illinois Commerce Commission to regulate and fix rates for intrastate commerce, it has been well said, (*Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 335 Ill. 70, 85,) "is exactly the same as that of the Interstate Commission to regulate and fix the rates for interstate commerce, and neither commission is subject to any interference by the other, with the exception

that the Interstate Commission has authority under the Interstate Commerce act to remove discriminations against interstate commerce, and to that end may control intrastate rates so far as necessary to remove unjust discriminations against interstate commerce resulting from the relation of interstate and intrastate rates which are reasonable in themselves. [Citations.] That Congress could and did vest the Interstate Commission with authority to remove an existing discrimination against interstate commerce by directing a change of an intrastate rate prescribed by State authority was decided in the *Shreveport Case,* 234 U. S. 342." No question is presented as to the paramount authority of the Interstate Commerce Commission to regulate the relationship between interstate and intrastate rates. The question is, instead, whether the order of the Illinois Commission shows by appropriate findings predicated on the evidence adduced that the Interstate Commission has exercised its superior jurisdiction. Not every discriminatory preference is denounced by the Interstate Commerce act, and a mere difference in rates does not necessarily constitute an undue discrimination nor render a particular rate illegal, unless, in the opinion of the Interstate Commerce Commission, the rate is, in fact, unjustly discriminatory or prejudicial. (*Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com. supra.*) An order of the Interstate Commission attempting, by fixing intrastate rates or prescribing a relationship between intrastate and interstate rates, to remove unjust discrimination against interstate commerce or undue prejudice to shippers therein, even if properly proved, will not be effective unless it conforms to a high standard of certainty. (*Illinois Central Railroad Co.* v. *Public Utilities Com.* 245 U. S. 493.) Where a serious doubt obtains as to whether an order of the Federal commission extends to intrastate rates, the doubt should be resolved in favor of the exercise of the State's power. (*Arkansas Railroad Com.* v. *Chicago, Rock Island and Pacific Railroad Co.* 274 U. S. 597.) In

order to show that the State commission had been divested of jurisdiction over the intrastate commerce and rates involved in this proceeding it was essential, first, that the order of the Interstate Commission by which defendants assert the latter purported to assume jurisdiction over the subject matter be before the Illinois Commission. Upon establishing the existence of such an order as a fact, an examination of the order then becomes necessary to determine whether the conditions exist upon which the authority of the State is dependent or, conversely, the right of the Federal Commission to exercise its superior power. (*Illinois Central Railroad Co.* v. *Public Utilities Com. supra; Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 242 U. S. 333.) In short, to establish their defense to the complaint, it was incumbent upon the defendants to prove the fact that an order had been entered in the *Chicago Producers case* on September 23, 1921, which contained findings having the legal effect attributed to them. The only authoritative evidence of this requisite fact was the decision and order of the Interstate Commerce Commission itself. *Arkansas Railroad Com.* v. *Chicago, Rock Island and Pacific Railroad Co. supra; Illinois Central Railroad Co.* v. *Public Utilities Com. supra; Chicago and Eastern Illinois Railway Co.* v. *Commerce Com.* 341 Ill. 277; *Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 335 id. 624.

Admittedly, the decision and order of the Interstate Commerce Commission in the *Chicago Producers case* was not offered or received in evidence. The Illinois Commission could not, therefore, consider it, as its order must be based on evidence presented at the hearing. "A finding without evidence is beyond the power of the commission to make," it has been observed, (*Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com. supra,*) "and nothing can be treated as evidence which is not introduced as such." See, also, *United States and Interstate Commerce Com.* v.

*Abilene and Southern Railway Co.* 265 U. S. 274, 288. Facts conceivably known to the commission but not put in evidence will not support an order. (*Chicago Junction Case,* 264 U. S. 258.) The disclaimer of jurisdiction by the Commerce Commission rests upon quotations from an order in its own docket No. 10666 and from the report of the Federal commission in *Chicago Gravel Co.* v. *Atchison, Topeka and Santa Fe Railway Co.* 118 I. C. C. 633,—not upon the actual decision and order in the *Chicago Producers case.* The orders in those two proceedings disclose that no issue was involved in either case concerning the legality of the Jones tariff rates or the effect of the successive suspension orders of the Illinois Commerce Commission relative thereto. Manifestly, quotations from orders in the cases referred to by the commission did not constitute a competent basis for its order. These extraneous statements showed neither that the Illinois Commission lacked jurisdiction of the complaint nor that the Interstate Commission had assumed or still had jurisdiction over the intrastate rates here involved. Particularly pertinent is the observation of this court in *Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 335 Ill. 624, 638, 645: "The statement in one case that the tribunal in another had stated a particular fact is no evidence in another controversy upon a different issue between different parties and in another tribunal of the correctness of the fact stated. The commissioners cannot act on their own information. Their findings must be based on evidence presented in the case, with an opportunity to all parties to know of the evidence to be submitted or considered, to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal, and nothing can be treated as evidence which is not introduced as such. [Citations.] * * * The finding that the rates from the various districts to Chicago had their origin in a proceeding before the Railroad and Warehouse Commission of Illinois prescribing just and reasonable rates, * * * had no sup-

port in the evidence. The order of the Railroad and Warehouse Commission was not offered in evidence and no reference is shown in the abstract to have been made to it. No copy of it was produced and no evidence offered of its contents or of the proceedings of the Railroad and Warehouse Commission." *United States and Interstate Commerce Com.* v. *Abilene and Southern Railway Co. supra; Chicago Junction case, supra; Interstate Commerce Com.* v. *Louisville and Nashville Railroad Co.* 227 U. S. 88; *Chicago and Eastern Illinois Railway Co.* v. *Commerce Com. supra,* are to the same effect.

Section 65 of the Public Utilities act requires the Commerce Commission, at the conclusion of a hearing upon any complaint, to make and render findings concerning the subject matter and facts inquired into and to enter its order based thereon. This court has on numerous occasions announced that the findings of the Commerce Commission under section 65 must be sufficiently specific to enable an intelligent review of the commission's decision and to ascertion whether the facts, as found, afford a reasonable basis for the order entered. (*Commerce Com.* v. *Chicago Railways Co.* 362 Ill. 559; *City of Chicago* v. *Commerce Com.* 356 id. 501.) When an administrative agency is required, as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. Where lacking, the order, it follows necessarily, is ineffective. (*Wichita Railroad and Light Co.* v. *Public Utilities Com.* 260 U. S. 48, 59; *Louisville and Nashville Railroad Co.* v. *Commerce Com.* 353 Ill. 375; *Chicago and Eastern Illinois Railway Co.* v. *Commerce Com. supra; Chicago Railways Co.* v. *Commerce Com.* 336 Ill. 51.) The order in this proceeding does not contain a single statement from the decision and order in the Interstate Commerce Commission proceeding which it holds to be determinative of the controlling issue here involved. Moreover, the record is silent in this respect. An examination of the order

simply fails to show the action taken by the Interstate Commerce Commission with respect to the intrastate rates, the subject matter of the complaint. Competent evidence showing that the Interstate Commerce Commission, in the *Chicago Producers case*, prescribed and ordered intrastate rates from complainants' plants to destinations in the inner zone is wanting, and, in consequence, the findings of the Illinois Commission are wholly inadequate to support its conclusion that it lacked jurisdiction to grant the relief sought. The Commission's action in entering an order unsupported by competent evidence was arbitrary and unreasonable in the extreme and is void.

The defendants urge, however, that the proceedings before the Interstate Commerce Commission were disclosed in their amended answer and their motion to dismiss. This is, in effect, an argument that a finding prerequisite to the validity of the order of the commission may be supplied by implication. This cannot be done. An express finding was indispensable. *Wichita Railroad and Light Co.* v. *Public Utilities Com. supra.*

The defendants also argue that the fact of the entry of the order in the *Chicago Producers case* must be considered admitted for the reason that the complainants did not deny its issuance in their replication. The jurisdiction of the commission cannot be defeated, either by assertions of the defendants or by the failure of the complainants to deny such assertions. (*Wichita Railroad and Light Co.* v. *Public Utilities Com. supra; Chicago Railways Co.* v. *Commerce Com. supra.*) The decisive question is not whether an order was entered by the Interstate Commerce Commission but is, instead, whether the order of the Illinois Commerce Commission shows that such order was introduced in evidence at the hearing in the present proceeding and afforded a basis for its decision. To hold that the findings in the order of the Illinois Commission need not be based on evidence presented at the hearing "would mean that," as the United

States Supreme Court well said in *Interstate Commerce Com. v. Louisville and Nashville Railroad Co. supra*, "where rights depended upon facts, the commission could disregard all rules of evidence, and capriciously make findings by administrative fiat."

Defendants also assert that the complainants are estopped from assailing the order under review because their petition for rehearing did not challenge the sufficiency of the evidence with respect to the report and order of the Interstate Commerce Commission in the *Chicago Producers case*. The petition for rehearing refutes this argument by affirmatively disclosing that complainants made the charges, among others, that the findings and order of the commission were based upon incompetent evidence, were contrary to the evidence and were not supported by substantial evidence.

We hold that the suspension of the Jones tariff of increased rates by the Illinois Commerce Commission was a valid exercise of its authority conformably to sections 36 and 37 of the Public Utilities act. The suspension orders were in effect during the period in question and intrastate shippers were entitled to the benefit of the prevailing lower rates under the suspension orders. It is conceded that defendants did not comply with the terms of these mandates. Since the legal rates were not applied to complainants' shipments they were entitled to reimbursement of the overcharges. The circuit court, it follows, properly reversed the decision of the commission to the contrary.

By their answer defendants interposed a second defense, namely, that the issues in controversy were involved in a complaint filed on December 18, 1925, No. 15878, *Chicago Gravel Co. v. Atchison, Topeka and Santa Fe Railway Co.* and the investigation and suspension proceeding, No. 15539, and consolidated causes, and, having been adversely decided to the complainants on November 30, 1926, had become *res judicata* in so far as the commission was concerned. The commission in its order disposing of the complaint

merely recited that the defendants interposed this defense but did not consider the contention. Nor did the circuit court refer to or decide this issue. This question is not before us. It may be observed, however, that a sufficient reason for not making a specific finding with respect to the defense of *res judicata* is that the Commerce Commission is not a judicial tribunal and its orders are not judgments which are *res judicata,* but are subject to change by the commission when changed conditions warrant. *Illinois Power and Light Corp.* v. *Commerce Com.* 320 Ill. 427.

The order of the circuit court of Cook county is affirmed.

*Order affirmed.*