Appellant seeks the reversal of a judgment of the circuit court of Du Page County, affirming an order of the Illinois Commerce Commission requiring appellant to furnish additional rear-end flagman protection on certain of its passenger trains operated in Illinois.
The Brotherhood of Railroad Trainmen, a voluntary association, by its State Legislative Representative, filed a complaint with the Illinois Commerce Commission alleging that appellant railway company is a public utility and as such subject to the provisions of an act to provide for the regulation of public utilities; that the duties of train crews, employed by appellant in the operation of its passenger trains, are such as to require extreme caution and care in the operation of such trains, and that appellant has failed to adequately man its passenger trains in the State of Illinois, so that its trains can be operated without endangering the life, health and safety of the train crews, employees and the public; that appellant uses only one brakeman in its passenger train service; that said train service requires the use, in Illinois, of at least two brakemen, or one brakeman and one flagman, so that the operation of said passenger service can be conducted without endangering the life, health and safety of employees and the public. The petition prayed that the Commerce Commission require appellant to operate its passenger trains of less than five cars so that they be manned with a minimum train crew of not less than one conductor, one brakeman, and, when baggage is handled on said trains, one additional baggageman be added; that on passenger trains of five or more cars there shall be added to said crews one additional brakeman or flagman, so that said passenger trains may be operated without endangering the life, health and safety of said train crews, other employees and the public.
The testimony, upon which the order of the Commerce Commission was based, tends to show that appellant operates *Page 192 
two passenger trains each way between Chicago and the Mississippi river, partly over its own tracks and partly over the tracks of other railroads. Appellant's train operations are, in part, governed at all points by an automatic, electric block signal system. These signals carry the usual green, red and amber lights, indicating to engineers on approaching trains, whether the way is clear, blocked or such as to require caution. If, for any reason, the electric current is off, the light automatically shows red. The closest signals are 2500 feet apart. The signal system is maintained by maintenance men, each of whom covers approximately twenty miles of track. There are three trains classified as first-class trains and their schedules take precedent over other trains operated over the railroad. The train crew on each of these trains consists of a conductor, brakeman, engineer, fireman and a joint express-baggage man. The brakeman performs flagging duties. All the trains are operated on printed time tables and orders issued to train crews by the dispatcher and delivered to the train crew before the departure of a train from its terminal, and by supplemental orders delivered to the train crew at stations on the line of travel. Private telephones are in each station, at each end of passing tracks, and a portable telephone is carried in the baggage car to be used in case of emergency, to communicate with the dispatcher, who is on duty 24 hours each day. Appellant issued a book of rules, which each crew member is required to study, and to submit to periodical examinations testing his familiarity therewith.
Rule 99 is cited as important here, and its material provisions are as follows:
"When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with the flagman's signals a sufficient disstance to insure full protection. One-fourth of a mile from the rear of his train he will place one torpedo on *Page 193 
the rail, continuing back an additional one-fourth mile where he will place two torpedoes on the rail, three rail lengths (100 feet) apart. He will then return to the single torpedo where he will remain until relieved by another flagman or is recalled by the whistle of his engine. When whistle signal has been given to recall the flagman, and safety to the train will permit, he may return after leaving the one torpedo. When the conditions require he will leave a lighted fusee.
"During foggy or stormy weather and in the vicinity of obscure curves or descending grades, or when other conditions require it, the flagman will increase the distance, placing two torpedoes at every one-fourth mile after having placed the one.
"The front of the train must be protected in the same way when necessary.
"Should a train be seen or heard approaching before the flagman has reached the required distance, he must at once place one torpedo on the rail and, if it is by night or during foggy or stormy weather, he must display a lighted fusee in addition and continue in the direction of the approaching train.
"If the flagman is recalled before reaching the required distance he will, if necessary, place two torpedoes on the rail, three rail lengths (100 feet) apart by day and, by night or during foggy or stormy weather, display a lighted fusee in addition, to protect his train while returning.
"When a train is moving under circumstances in which it may be overtaken by another train the flagman must take such action as may be necessary to insure full protection. By night, or by day when the view is obscured, lighted fusees must be thrown off at proper intervals."
Rule 843 deals with passenger brakemen and provides: "While on duty they are under the direction of the conductor." That rule designates various duties of the brakeman, including taking care of and properly displaying train *Page 194 
signals; attending the lighting, ventilating and heating system, (except sleeping cars,) opening and closing car doors; assisting the conductor in loading and unloading passengers; preventing passengers from riding on platforms or violating safety regulations; and doing all things requisite for the prompt movement of the trains and the comfort of the passengers. He is not permitted to pass through private cars unless absolutely necessary, and when the last car of a train is an official or an observation car, he is to remain in the rear of the next car ahead unless otherwise instructed. Rule 843 also provides that brakemen "must immediately go back to protect the train where the rules require it, without waiting for signal or instruction to do so."
The evidence is that, in complying with the rules, the brakeman, while the train is in motion, seats himself in the rear end of the day coach, which may be either the last or next to the last car of the train. When milk cars or deadhead equipment are added to the train, they are all locked and placed between the engine and the express baggage car. Should the train stop at a point other than a station stop, the brakeman immediately goes back with his flagging equipment to protect the rear end of his train, in accordance with Rule 99. At station stops the brakeman assists in unloading and loading passengers and if the station agent is not on duty, he assists the conductor to unload any express or baggage from the train, unlock the station door, put the express or baggage in the baggage room and relock the station door. While doing this work either the conductor or brakeman is in a position to observe the rear of the train. With but few exceptions, but a minute or two is all that is required for a station stop. This procedure has been followed by all train crews for many years and no rear-end collision has occurred. It has never been the practice for the brakeman to go to the rear end of his train with flagging equipment at regular station *Page 195 
stops, nor has he been instructed so to do. In case a train is delayed at a station for an unusual length of time, or if the brakeman believes his train may be overtaken, he goes back with his flagging equipment to protect the rear end. The testimony shows that many surprise observation tests are made each month by appellant's officials, which disclose that trainmen comply with the rules.
Several brakemen and other employees of appellant testified that what was done by the several brakemen was not a compliance with Rule 99, but none of them testified that violation of the rules had resulted in a rear-end collision or that the life, health or safety of train crews, employees or passengers had been endangered.
Appellee's witnesses testified that it is possible that a train might be overtaken any time it stops, whether at a station or elsewhere, but that during all the time they had been railroading on appellant's railroad, none of them had ever gone back a fourth of a mile and set signals when a train stopped at a regular station, and no accident had ever occurred.
The order entered by the Commerce Commission made no finding or order requiring that all passenger trains carrying baggage be manned with a baggageman. No appeal has been taken as to that phase of the inquiry, hence it is not necessary to further refer thereto.
The order appealed from requires and directs appellant to maintain, on each of its passenger trains operating in Illinois, when the train consists of less than five cars, an operating crew including a regularly employed employee to perform flagman duties, and to furnish and maintain on all trains of five or more cars, an operating crew including a regularly employed employee to perform flagman duties, and a regularly employed employee to perform brakeman duties other than rear-end flagman protection.
The errors urged are: (1) The order of the Commerce Commission is not based on findings concerning the *Page 196 
subject matter and facts inquired into at the hearing before the commission; (2) the order does not meet the standard of definiteness and certainty required of mandatory orders of governmental agencies; (3) the order and important findings therein have no substantial support in the evidence and are contrary to the manifest weight of the evidence; and (4) even if otherwise valid, the order of the commission arbitrarily and unreasonably invades appellant's rights to manage its business in its own way.
It appears from the record that the make-up of trains of less than five and of trains of five or more cars, insofar as the protection of the rear end of the train is concerned, is the same, and that an additional flagman on trains of five cars or more is no more essential for the safety of appellant's employees, passengers, customers or the public than it is on trains of less than five cars. If additional protection by a flagman is necessary on trains of five or more cars, it is equally necessary on trains of less than five cars, because the evidence shows that the make-up of all trains is the same except as to the number of cars.
Is the order appealed from based upon findings concerning the subject matter and facts inquired into, as required by law? Both parties introduced into evidence certain rules, (copies of which were given each train crew member,) promulgated by appellant, designed to promote safety in the operation of appellant's trains, involved in this inquiry. Among them was Rule 99, hereinbefore set out.
The commission found that trains operating at the same time on the same track, and in the same direction, run at varying rates of speed, and one may overtake another at any time the advance train is stopped, whether at a station or elsewhere, and that Rule 99 contemplates continuous rear-end protection of trains, both at stops and while in motion; that while appellant has various other safety devices and other forms of train protection, such as *Page 197 
block signals, interlockings, home signals, yard limit rules, speed restrictions, centralized traffic control, telephone and telegraph service, these are supplemental to the protection afforded by trainmen, and do not eliminate the services to be performed by the flagman as provided by Rule 99; that all passenger trains involved in this proceeding are always operating under circumstances in which they may be overtaken by another train, either at stops or while in motion; that by reason of the matters and things set forth in the order and all the evidence in this case, continuous rear-end flagman protection is required and necessary to be afforded for each of appellant's passenger trains while in motion and at stops to promote safety for passengers, appellant's employees and the public. The commission finds that while appellant's trains 1, 2, 3 and 4 are stopped at Sycamore and Stockton the brakeman, in addition to other designated duties, inspects the train, and while so doing he does not, nor does any other member of said train operating crew afford rear-end flagman protection to said trains as required by Rule 99; that said train-stops require from one to ten minutes to perform the work necessary before said train may proceed on its run. The commission's order enumerates the work of the brakeman at each station or flag stop and finds that at each of said enumerated stops no train-operating employee is affording said train rear-end flagman protection as required by Rule 99.
The order further set out numerous other rules promulgated by appellant, defining the duties of its operating crew and other of its employees; that while the conductor is attending to the duties imposed upon him by the rules, which do not include protection of the rear end of the train, neither he nor any other crew member is able to fulfill the requirements of said rules with reference to protecting the rear end of said train; that by reason of the matters and things set forth and all the evidence in *Page 198 
the case, appellant should be required to furnish and maintain, on each and every one of its passenger trains operating within the State of Illinois, a passenger-train operating crew, including a regularly employed railroad-train operating employee to perform flagman duties at all times, and that when such trains consist of five cars or more, appellant should also be required to furnish and maintain a regularly employed railroad-train operating employee to perform brakeman duties, and ordered that appellant "be, and it is hereby, required and directed to furnish and maintain on each and every one of its passenger trains operating within the State of Illinois within thirty (30) days after the date of service of this order, a passenger-train operating crew including a regularly employed railroad-train operating employee to perform flagman duties when the train consist of less than five cars, and to furnish and maintain on each and every one of its said passenger trains, a passenger-train operating crew including a regularly employed railroad-train operating employee to perform flagman duties and a regularly employed railroad-train operating employee to perform brakeman duties, other than rear-end flagman protection, when such trains consist of five or more cars."
The order makes no reference, other than hereinbefore mentioned, to the undisputed testimony in the record regarding the automatic block system in operation over the entire length of appellant's railroad, nor concerning the effectiveness or noneffectiveness thereof, nor does it consider the services of dispatcher and communication lines, but merely states that appellant has various other safety devices and other forms of train protection, which are supplemental to the protection afforded by and to trainmen and do not eliminate the services to be performed by the flagman as provided under Rule 99. Nor did the order refer to or take into consideration the undisputed testimony that passenger trains are first-class trains, operated *Page 199 
upon time-table schedule and train orders issued by the dispatcher; that all other trains are not classified and, under the rules, operate subject to the time table showing the operating of all first-class trains. Nor does the order indicate consideration of the testimony and rules in evidence pertaining to the operation of all trains when the block signals show a yellow light, denoting "proceed with caution," or a red light denoting "stop." The order does not contain any finding that any or all of appellant's mechanical or other protective devices are inadequate or insufficient to protect trains on the same track ahead, so as to avoid a rear-end collision. Nor does the order refer to the undisputed testimony that in more than 35 years no train on appellant's railroad has collided with the rear end of another train.
The order sets out the rules promulgated by appellant, states wherein appellant's employees violate said rules, but makes no finding that by reason of such violations the safety of appellant's employees, passengers, or the public, is endangered, so as to demand continuous rear-end protection.
The record clearly shows that the make-up of all of appellant's four trains referred to, with reference to their rear-end protection, regardless of whether the train consists of five or more cars or less than five, is the same. The order makes no finding of the reason why an extra employee, to perform continuous flagman duty, is required on trains of five or more cars and not required on trains of less than five cars. It seems clear from the record, if continuous flagman service is necessary to protect trains of five or more cars, the same service is equally necessary on trains of less than five cars.
The order does not find that the health or safety of appellant's employees, passengers, customers or the public demands that continuous rear-end flagman service be performed by the operating train crew as is required by section *Page 200 
57 of the Public Utilities Act. (Ill. Rev. Stat. 1945, chap. 111 2/3, par. 61.) The power to require the performance of the duties imposed upon a brakeman or flagman, under the company rules for the protection of the health or safety of appellant's employees, passengers, customers or the public, is vested in the commission, but in the exercise of that power the commission is required to make a specific finding that the additional service, in this case continuous rear-end protection by flagmen, is demanded in order to provide that protection. The Public Utility Act provides for judicial review of all orders of the commission and that, unless the basic finding necessary to a valid order is made in the order, it may be set aside. United States v. Baltimore OhioRailroad Co. 293 U.S. 454, 79 L. ed. 587; Florida v. UnitedStates, 282 U.S. 194, 75 L. ed. 291; Public Utilities Com. exrel. Chicago Board of Trade v. Cleveland, Cincinnati, Chicago andSt. Louis Railway Co. 288 Ill. 502; Public Utilities Com. ex rel.Chicago Board of Trade v. Toledo, St. Louis and Western RailroadCo. 286 Ill. 582.
Though it be said that the order contains sufficient findings that continuous rear-end protection is necessary for the protection of the health and safety of appellant's employees, passengers, or the public, no consideration appears to have been given to the undisputed facts that the rules and practice of appellant and its employees do, as shown by the evidence, afford such safety. The conclusion of the commission that, because of the varying speeds of trains, one may overtake another at any time, whether at a regular or unusual stop, leaves out of consideration the undisputed evidence that the safety devices and rules prevent such accident and have for over thirty-five years. It seems to us that a more reasonable construction of the language, "when a train stops under circumstances in which it may be overtaken by another train," is that it relates to unusual stops not contemplated, or provided for, such as *Page 201 
may be caused by accident or mechanical failure between stations, and the like. The evidence shows that under such circumstances the brakeman goes back to protect the rear end of the train in accordance with Rule 99. Certainly, under the evidence in this record, Rule 99 could not be held to intend that at any and all stops including regular station stops, a brakeman or flagman should go back a quarter of a mile and install signals. Such a practice would unreasonably delay traffic and prevent maintenance of schedule, and under the safety provisions under which the evidence shows appellant's train to be operating, would approach the ridiculous. We are of the opinion that this conclusion of the commission is, under the facts of this case, wholly unwarranted. That conclusion seems to be the principal basis for the order complained of. The order is clearly based on such conclusion and a finding that the rules promulgated by appellant will, if complied with, afford adequate rear-end protection, but that appellant's train-operating employees do not and cannot at all times obey those rules. Hence, another flagman should be added.
To justify an order that appellant furnish an added operating employee to perform continuous rear-end flagman protection on passenger trains of five cars or more, it is necessary that the order specifically find that such added employee is necessary and is demanded to protect the health and safety of appellant's employees, passengers, customers and the public. An order failing to contain such a finding is void. Rockwell Lime Co. v. CommerceCom. 373 Ill. 309; Lambdin v. Commerce Com. ex rel. AssumptionMutual Telephone Co. 352 Ill. 104; Kewanee Galva Railway Co. v.Commerce Com. ex rel. Dohrn Transfer Co. 340 Ill. 266;Brotherhood of Locomotive Firemen and Enginemen v. New YorkCentral Railroad Co. 339 Ill. 201; Central Northwest BusinessMen's Ass'n v. Commerce Com. 337 Ill. 149; Chicago Railways Co. *Page 202 
v. Commerce Com. ex rel. Chicago Motor Coach Co. 336 Ill. 51.
We find the order appealed from is not based on findings concerning the subject matter and facts inquired into on the hearing before the Commerce Commission. The judgment of the circuit court confirming the order of the commission is reversed and the order is set aside.
Judgment reversed; order set aside.